UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CECILIA E. SILER, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | CAUSE NO.: 1:18-CV-237-HAB |

**OPINION AND ORDER**

Plaintiff Cecilia E. Siler seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. Plaintiff alleges that she has been disabled since November 5, 2014, due to a variety of physical and mental impairments. Plaintiff's sole issue on appeal is whether the Administrative Law Judge (ALJ) erred by not including Plaintiff's depression as a severe impairment and by not incorporating the effects of her depression into her Residual Functional Capacity.

**ANALYSIS**

**A.   The ALJ's Decision**

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of November 5, 2014, through her date last insured on June 30, 2016. At step two, the ALJ found that Plaintiff had the severe impairments of osteoarthritis in right hip, status post right total hip arthroplasty, degenerative changes in cervical spine, right knee degenerative joint disease, left hip problems, bilateral carpal tunnel syndrome, and obesity. The ALJ stated that these impairments significantly limited Plaintiff's ability to perform basic work activities.

2

The ALJ found that Plaintiff's medically determinable mental impairment of major depressive disorder did not cause more than minimal limitations on Plaintiff's ability to perform basic mental work activities and was therefore non-severe. The ALJ considered the four broad areas of mental functioning used for evaluating mental disorders. She found no limitations in three of the functional areas: understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. The ALJ found Plaintiff to have mild limitations in concentrating, persisting, or maintaining pace, as Plaintiff needed to sit down when performing activities of daily living.

At step three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (R. 17.) The ALJ considered listings 1.02 (Major dysfunction of a joint), 1.03 (Reconstructive surgery of a major weight-bearing joint), 1.04 (Disorders of the spine), and 11.14 (Peripheral neuropathy), as well as Social Security Ruling 02-1p (Obesity).

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Plaintiff could never climb ladders, ropes, or scaffolds, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The Plaintiff must avoid concentrated exposure to hazards such as machinery with moving mechanical parts and unprotected heights. Plaintiff could, however, frequently engage in handling and fingering.

Based on the above RFC and her hypothetical questions to the vocational expert, the ALJ found that Plaintiff was able to perform her past relevant work as a training advisor. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

**B.     Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the

4

ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**C.    Major Depressive Disorder**

*1.    The Record Evidence*

The administrative record contains the following evidence related to Plaintiff's depression. In January 2014, Plaintiff reported to her family physician, Dr. Crisman, that she was experiencing "[s]ome depression on and off." (R. 360.) Her mood and affect were "depressed, flat and labile." (R. 362.) Dr. Crisman assessed that Plaintiff had depression with agitation and fatigue and insomnia, and that these could be contributing to a number of her other symptoms. He gave her a prescription for fatigue.

In August 2015, Plaintiff saw Dr. Myers for re-evaluation of knee pain. She denied depression or emotional disturbances (R. 371), as she had during two previous office visits in July 2015 (R. 374, 376). She also denied depression or emotional disturbance in September 2015 (R. 385) and October 2015 (R. 383). Not until January 2016, during Plaintiff's appointment with Dr. Crisman for arthritis pain does she again report that she has no energy, wants to sleep all the time, and is depressed. (R. 467.) Dr. Crisman assessed

5

"[m]oderate single current episode of major depressive disorder (296.22) (F32.1)." (R. 468.) Dr. Crisman started Plaintiff on Bubropion (Wellbutrin).

Two months later, on March 25, 2016, Plaintiff stated that she was doing really well with the depression, the medications were working, and she had no side effects. In June 2016, Plaintiff again advised Dr. Crisman that she had done well with the Wellbutrin and wanted to wean off it. (R. 451.)

In a treatment note dated May 3, 2017, Dr. Conner suggested that a psychiatric component could have been a contributor to Plaintiff's knee pain.

## 2. *The ALJ's Decision*

Plaintiff asserts that because an error occurred at step two when the ALJ did not recognize her major depressive disorder as more than minimally limiting her ability to perform basic mental work activities, his RFC assessment was also in error. Defendant disagrees, contending that Plaintiff generally relies on the fact that a depressive disorder was mentioned in a relatively few number of treatment notes and on the types and dosages of medications she was taking to argue that the ALJ improperly omitted unspecified limitations relating to the effects of her depression in assessing her RFC.

Because the step two requirement of severity is "merely a threshold requirement," the Court will proceed directly to the RFC analysis. *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *see also Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) ("Because the ALJ recognized numerous other severe impairments, he was obligated to proceed with the evaluation process."). Plaintiff is essentially asserting that limitations corresponding to her mental impairment should have been included in the RFC. Indeed, an ALJ must

6

"consider the limitations imposed by all impairments, severe and non-severe." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019); 20 C.F.R. § 404.1523. The duty to analyze non-severe impairments in formulating a claimant's RFC to be used at steps four and five is fundamental to the disability programs under the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987) (emphasizing duty of Commissioner, when there is at least one severe impairment, to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity") (quoting 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(F) (1982 ed. and Supp. III)); *see also Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal.") (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

Here, Plaintiff has not identified any limitations that the ALJ failed to consider in connection with her diagnosis of depression, single episode, moderate. She seems to be saying that some of her restrictions, rather than being related solely to pain caused by her physical condition, could also be attributable to depression. For example, Plaintiff posits that "[a]t times, [she] was not self-aware of her depression, or her maximum-dose medication for it sufficiently minimized the symptoms at the time, or else the doctor office did not ask or explore the issue and left the default-marked denial of depression in the review of symptoms." (Brief in Supp. 4, ECF No. 22.) Plaintiff's suggestion that the ALJ should have weighed differently the absence of a notation for depression is not a legitimate basis for remand.

Plaintiff's reliance on the third-party function report completed by Plaintiff's husband on September 5, 2015, does not make up for a lack of medical documentation. In any event, his report does not suggest that Plaintiff suffered from a mental impairment that impacted her functioning to any greater degree than what could be attributable to her severe impairments, such as osteoarthritis and degenerative joint disease. In response to the questions queried in the report, he noted that Plaintiff sat down and rested after physical activities. Prior to her illnesses, injuries, or conditions, she could stand and walk freely without pain or popping sounds from her hip and knee. Her condition impacted her sleep because she was not able to get comfortable due to her hip. Her condition also impacted her ability to sit or stand in one position very long. Although she had no difficulty getting along with others, she did not go out to see people. Plaintiff still went to the grocery store weekly and to the mailbox regularly. She also socialized with her husband and kids every day, as well with friends. The report indicated that Plaintiff was able to pay attention as long as needed and that she followed written and spoken instructions well. The report also indicated that Plaintiff handled stress and changes in routine well. In response to the inquiry whether he noticed any unusual behavior or fears in his wife, Plaintiff's husband wrote, "She feels like she is worthless." (R. 243.)

The ALJ cited the third-party functional report, as well as Plaintiff's own report, when assessing Plaintiff's areas of functioning. For every area, the report supported a finding of no limitations. The ALJ found only the comment related to having to sit between activities of daily living as supporting a limitation related to pace. However, the report itself suggested that pace was problematic after Plaintiff engaged in activity where

she was moving around. Plaintiff has not explained how a limitation to a restricted range of sedentary work is not adequately tailored to Plaintiff's conditions, even when considered in combination. The RFC determination was consistent with the finding of the state agency consultant, who was aware of Plaintiff's mental health reports and record. The ALJ gave this opinion great weight, noting, "Dr. Larsen reviewed the claimant's medical evidence and her activities of daily living and found them to be consistent with the fact that the claimant's mental impairments had no more than a minimal effect on her ability to perform basic work activities." (R. 21.)

Plaintiff has not identified any further limitations that would have been necessary to account for symptoms related to her depression. Even if Plaintiff's depression played some role in her pain and related symptoms, Plaintiff does not even attempt to answer what limitations should have been included in the RFC that were not. The ALJ readily noted Dr. Crisman's January 2014 treatment note that Plaintiff's depression could have been contributing to her neck pain. She also acknowledged that, in May 2017, Dr. Conner suggested that her abnormal response to pain could have a psychiatric component. However, that was after her date last insured. (R. 20) (noting that ALJ had already concluded that Plaintiff had no severe mental impairments on or before her date last insured). In any event, Plaintiff's knee pain improved after that date (R. 20), and Plaintiff was not in counseling with any mental health specialists (R. 15). Thus, it appears that the ALJ appropriately focused on Plaintiff's joint pain when assessing the combined impact of her impairments.

Plaintiff identifies no medical or medical-opinion evidence concerning the impact of her episode of depression on her ability to perform work-related activities. Instead, she relies on the fact of a diagnosis to argue that it must have produced some limitation that should have been included in the RFC. She also speculates that her depression was more prevalent than noted in the medical records. These arguments do not persuade.

Plaintiff bore the burden of providing evidence establishing the degree to which her impairments limit her ability to work. 20 C.F.R. §§ 404.1545(a)(3). For her part, the ALJ did not dismiss a line of evidence contrary to her ruling. She sufficiently articulated her assessment of the evidence to assure the court that she considered the important evidence and to enable the court to trace the path of her reasoning as it concerns Plaintiff's depression. Remand is not warranted on this record.

**CONCLUSION**

For the reasons stated above, the Commissioner's decision, as set forth in the ALJ's decision, is AFFIRMED.

SO ORDERED on February 11, 2020.

                                                           s/ *Holly A. Brady*
                                                         JUDGE HOLLY A. BRADY
                                                         UNITED STATES DISTRICT COURT